## TRADERS' NAT. BANK *v.* PARKER.

(*Supreme Court, General Term, First Department.* January 24, 1890.)

GUARANTY—CONSIDERATION.

    In an action on a note, it appeared that plaintiff was about to begin suit on an overdue note of J. and H., who were indebted to defendant; that one of the makers of the note called, with defendant, on plaintiff, to adjust the matter; and that then defendant signed the note, and gave other securities to plaintiff, who agreed to extend the time of payment, and not commence suit against the other makers of the

note, though no particular time of delay was named. *Held*, that the forbearance to enforce payment of the note constituted a sufficient consideration to fix the liability of defendant thereon.

Appeal from judgment on report of referee.

Action on a note by the Traders' National Bank of San Antonio, Tex., respondent, against Charles T. Parker, appellant. The action was referred to Hamilton Odell, Esq., and tried before him, and upon whose report judgment was entered for plaintiff, from which defendant appealed. The referee's opinion below is as follows:

"ODELL, Ref. The plaintiff sues upon a promissory note in form as follows:

"'SAN ANTONIO, TEXAS, July 19, 1883.

"'Ninety days after date we, or either of us, promise to pay to the order of Traders' National Bank, at the Traders' National Bank, San Antonio, Texas, ten thousand two hundred and sixty-five 5-100 dollars, for value received, with interest at ten per cent. per annum after maturity until paid, and with an attorney's fee of ten per cent. should judicial proceedings be used in collecting. J. P. HODGSON.

"'F. W. JAMES.

"'CHARLES T. PARKER.'

"It is undisputed that the paper was not signed by the defendant till about the 11th of February, 1884, nearly four months after it had matured. The defendant's contention is that he applied to the plaintiff for a loan of $13,000, offering as security therefor a note made by one Charles H. Nash for upwards of $14,000, and certain lots of land in San Antonio which had been conveyed to the defendant by said Nash to secure said note, and also a mortgage upon a certain herd of sheep which he intended to buy with the proceeds of said loan; and he alleges that the plaintiff then agreed ' to make him the said loan of $13,000 upon the said security, provided the defendant would then sign the promissory note so as before executed by the said Hodgson and James,' and that in consideration of the plaintiff's said agreement, and for no other consideration whatever, he did then sign the note last mentioned, and deliver to the plaintiff the said Nash note, and a deed of said lots of land. He further alleges that afterwards the plaintiff refused to keep its said agreement, and make said loan; and he therefore claims that the consideration for his signature to the note in suit has wholly failed. In answer to this, the plaintiff asserts that it made no such agreement as the defendant sets forth, and that the true consideration for the defendant's signature to said note was an agreement by the plaintiff to forbear or delay legal proceedings against Hodgson and James for the collection thereof. The defendant's testimony is in substantial harmony with the allegations of his pleading except in one particular. By his answer, his signature to the Hodgson and James note was exacted by the plaintiff as a condition of the loan which he solicited. According to his testimony, he offered to sign the note as an inducement to the plaintiff to make the loan. He said: 'I told him [the plaintiff's president] that this stock would be sold, and that he had no chance to get his money, nor I to get anything out of Hodgson, unless some compromise could be made between us,—some arrangement. I had these notes of Nash, and also two city lots; and I proposed to Brownson that I should borrow $13,000 from him to buy this herd of sheep, which would be sold in a day or two, and for that I would turn over to him these notes of Nash, and also put my name to the note in suit for $10,000. He finally agreed to it.' The testimony of Mr. Brownson, the former president of the plaintiff, is in direct contradiction of the defendant. He says that the defendant's request for a loan of $13,000 was promptly declined; that the note was not signed by the defendant on any promise that such loan should be made; that the bank had been trying in every way to collect the note, and to bring Hodgson to a settlement, and had threatened to put the note in suit against both Hodgson and James unless

Hodgson adjusted the matter by paying the note, or giving additional security. Then Col. James and the defendant came to San Antonio, 'and made known to us [Mr. Brownson says] that their business was to see about that note.' There were several interviews, and the result was that the note was signed by Parker. Brownson says that he made no promise, 'any further than giving an extension of time, as otherwise we would immediately have brought suit upon the note against the makers of it.' These statements are corroborated in part by the witness Thornton. He was the bank's cashier. He testified that they had threatened to 'put that paper through' at the term of court which was then approaching; that James and Parker came together to make some arrangement about the note; that several interviews took place between them and himself and Brownson; that James recommended Parker as being good for anything he might do; and that the arrangement or the substance of the proposition was that a delay should be given if Parker signed the note, and additional security was put up.

"There are circumstances which, it seems to me, support the contention of the plaintiff. If the Nash note and the lots in San Antonio were transferred to the bank in anticipation of, and only as security for, a loan which the plaintiff agreed, but afterwards refused, to make, why did not the defendant, upon such refusal, demand a return of his property, and the erasure of his name from the Hodgson note? Again, if the agreement for a loan of $13,000 was actually made, was so settled upon that the defendant was willing to deliver to the plaintiff at that time all the security for the loan which he had agreed to furnish, and did in fact sign the Hodgson note and pass over to the plaintiff the Nash note, and his title to the lots, why was not the transaction completed in that direction by his giving a note, or some similar obligation, such as would be required in the ordinary course of business, for the loan itself? It is not an answer, under the circumstances, to say that the giving of such a note or obligation would naturally follow or attend the actual making of the loan which was to occur thereafter, for so would the delivery of the collateral. Again, these facts, that James, who was threatened with suit, visited the plaintiff with Parker, and begged for time upon his note, offering Parker as security,—and this is not disputed,—and that Parker signed the note at that time, and that suit against James and Hodgson was delayed, contribute to the strength of the plaintiff's claim. Again, in a letter to Brownson, written at Colorado City, and dated the 23d of February, two weeks after the date of the alleged agreement for the $13,000 loan, the defendant says as follows: 'We have tried in every way to raise the $13,000, but have been unable to do so. We now look to you to assist us; and I think it best for you to come up on receipt of telegram from us, which will be sent in time for you to look into the matter before the sale, and fully satisfy yourself as to the value of the property.' The property here referred to was the herd of sheep, to purchase which Parker had applied to Brownson for the $13,000, and which was about to be advertised for sale under a chattel mortgage held by Scott. There is great force in the question put by plaintiff's counsel: If Brownson had already agreed with Parker to loan him the $13,000, why should he have been trying 'in every way' to procure it elsewhere? When this letter is read in connection with Brownson's testimony, it is made reasonably certain that Brownson had not engaged to make any loan to Parker. On cross-examination, Mr. Brownson said: 'There was a mortgage that a man by the name of Scott held up there against the sheep, and Mr. Parker seemed to think that there would be some chance of making a part of the debt out of the margin of those sheep. It was Mr. Parker's wish, as he expressed himself, that we go up there and take up that mortgage. Mr. Parker believed that the sheep were worth a great deal more than the mortgage that Mr. Scott held, and it was with the view of looking into the value of the sheep that I went up there afterwards on a telegram or letter from Parker.' He further testified that he was 'not aware that the signing of the

note by Parker made it absolutely secure;' that he thought it best to go there, (to Colorado City) and see what could be done towards getting additional security, or attaching Hodgson's property; that that was his real object in going, and that the inquiry that he made satisfied them that the sheep were not worth the money they were mortgaged for. Again, on June 25, 1884, the defendant wrote to C. H. Nash, the maker of the note which Parker testifies he delivered to the bank as collateral to the agreed loan, as follows: 'It is understood between the Traders' National Bank and myself, that should the two lots of ground, situated on Tobin Hills, transferred by you to me, and by me to Jas. S. Thornton, cashier, be sold, that you shall get credit on above note for any excess over fifteen hundred dollars.' This, it seems to me, amounts to a recognition by the defendant of a then existing right of some sort in the bank to the note, and the lots referred to. There is a plain preponderance of testimony in favor of the plaintiff; and my conclusion is that the defendant signed the note in suit at the request of James, and to obtain time for him and Hodgson, and not upon any agreement by the plaintiff to loan the defendant money.

"It is, however, insisted by the defendant that his signature to the note was made without consideration, inasmuch as there was no agreement on the part of the plaintiff to extend the note for any definite time. It is admitted by both Brownson and Thornton that there was no such agreement, but only an agreement 'to extend the time for the present,'—'to withhold suit until we could see how matters were going with Hodgson.' It is also a fact that no suit against James or Hodgson has yet been brought upon the note. This objection seems to be fully met and answered by *Insurance Co.* v. *Smith*, 23 Hun, 535. The case of *Bank* v. *Franklin*, 55 N. Y. 235, was there examined and distinguished, and held not to be applicable to a case similar in its material features to the case in hand. This later authority must control my decision of this case. The note in suit contains a stipulation for the payment of an 'attorney's fee of ten per cent., should judicial proceedings be used in collecting.' Such a stipulation has been held to be not enforceable in states where costs and attorney's fees are fixed by statute. *Bullock* v. *Taylor*, 39 Mich. 137; *Witherspoon* v. *Musselman*, 14 Bush, 214. It is admitted that the defendant is entitled to a credit for $1,500, with interest from June 25, 1884; that being the agreed value of the Nash lots which were taken by the bank. I think that he should also be allowed the further sum of $1,548.91, which sum is indorsed on both the Nash note and the note in suit as a payment on November 29, 1886. In the complaint verified by the plaintiff's president on April 23, 1887, this credit was admitted, with interest at ten per cent. On the trial, plaintiff's counsel moved to amend the complaint by striking out this allegation or admission, and his motion was granted. This, I think, was a gross mistake; but the defendant, in his amended answer, has alleged the payment of the $1,548.91 on account of the Nash note. The facts are these: The Nash note was made on February 8, 1884, and was payable in four years from date, with interest at eight per cent., payable 'on or before November 15, 1884, 1885, 1886, and at maturity.' On November 29, 1886, Nash had to his credit in the plaintiff bank the said sum of $1,548.91. No payment had been made on account of interest on the Nash note; and the bank applied said sum on account thereof, making the following indorsement on the Nash note: '$1,548.91 ac. interest due, pd. on within note,' and the following indorsement on the note in suit: '1,548.91 pd. on within note 11-29-86.' About that time, Nash died, but whether before or after the application of said sum was made, does not appear. Since the commencement of this action his administrator has brought suit against the plaintiff for the recovery of the $1,548.91, and has recovered judgment, from which the plaintiff has taken an appeal, which is undecided. It seems to me that the act of the plaintiff in applying the money on account of the unpaid interest was proper; that the indorsement on the note in suit was a valid indorsement:

and that the defendant cannot be prejudiced by events which have occurred since he was brought into court, the issue of which is still uncertain. The plaintiff is entitled to judgment for the amount due upon the note in suit, less the two credits above mentioned."

Argued before VAN BRUNT, P. J., and BRADY and DANIELS, JJ.

*Bristow, Peet & Opdyke,* (*David Willcox,* of counsel,) for appellant. *John Lindley,* (*Sutherland Tenney,* of counsel,) for respondent.

BRADY, J. The defense set up against the claim urged herein upon a promissory note signed by the defendant is a failure of consideration. The defendant insists that the plaintiff agreed to make him a loan when the note in suit was signed by him, which it failed and refused to do. The plaintiff responds by alleging that the consideration of the note was an agreement to extend the time of payment to forbear to commence proceedings to recover against the other makers, which was done, although no particular period was named; the delay, however, being to some extent dependent upon the wishes of the defendant, who was to observe and advise the plaintiff of the course of events as to Hodgson, one of the makers, and who was the debtor of the defendant to a large amount, as asserted by the latter, and in whose affairs he had an interest with a view to his own payment. The agreement thus forming the serious contention before the referee was considered upon conflicting evidence. The witnesses for the plaintiff had no personal interest in the result; one of them being an ex-president of the plaintiff, and the other its president. The defendant was interested personally in the result, and his testimony is subject to such criticism as that relation may warrant. He was distinctly contradicted by the two witnesses for the plaintiff, and by some circumstances developed by the evidence contained in the record. The referee, as his opinion assures us, gave full and careful consideration to the testimony to which he listened; and he had the great advantage of seeing and hearing the witnesses. His treatment of the evidence, and his reasons expressed, leave us nothing other to do on the question of fact than to accept his conclusions. There are here, as in all cases where conflict prevails, some facts and circumstances favoring the defendant, but they are overborne by others sustaining the plaintiff's position; and we would not be justified in saying that there was a preponderance in favor of the defendant. Indeed, under all the facts and circumstances developed, we cannot say even that the case is one which may be regarded as close, upon all the proofs submitted. The defendant insists, nevertheless, that he is not liable, inasmuch as the consideration stated, assuming the plaintiff's version to be correct, was a mere indulgence, and not such an extension of time or forbearance as required by the rules of law to create a bar. This subject, in a kindred case, was considered in this department, (see the case of *Insurance Co.* v. *Smith,* 23 Hun, 535,) and the result declared on that appeal is adverse to the defendant's contention. The plaintiff having agreed to forbear, and having done so, the obligation incurred by the defendant was perfected, and his liability consummated. It is thought by the learned counsel for the appellant that the adjudication referred to does not decide the question suggested, but this is an erroneous view of it. Judge DANIELS discussed it, and I presented dissenting views. Judge DAVIS concurred in the result, and thus the question was determined. It was the leading issue between the judges. If the decision did not cover it, I should be inclined to insist upon my views therein expressed. There are no other questions requiring examination, and the judgment must therefore be affirmed, with costs.

DANIELS, J., concurs.

VAN BRUNT, P. J. Upon the authority of *Bank* v. *Penfield,* 69 N. Y. 502, I concur in the result.